IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

JAY H. MORSE,

                                                Civil Action No.
                                                9:13-CV-1354 (LEK/DEP)

                Plaintiff,

        v.

RONALD MALLERNEE and
DOUGLAS SPRINGER,

                Defendants.
_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

JAY H. MORSE, *Pro Se*
12-B-1199
Riverview Correctional Facility
P.O. Box 247
Ogdensburg, NY 13669

FOR DEFENDANT MALLERNEE:

HON. ERIC T. SCHNEIDERMAN              MICHAEL G. McCARTIN, ESQ.
New York State Attorney General        MARK G. MITCHELL, ESQ.
State of New York                      Assistant Attorneys General
The Capitol
Albany, NY 12224

FOR DEFENDANT SPRINGER:

HON. ROBERT G. BEHNKE                    LEIA D. SCHMIDT, ESQ.
Broome County Attorney                   Assistant County Attorney
Broome County Office Bldg.
P.O. Box 1766
16 Hawley Street
Binghamton, NY 13902

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by *pro se* plaintiff Jay H. Morse, who is currently a New York State prison inmate, against a corrections officer employed by the New York State Department of Corrections and Community Supervision ("DOCCS") and a local jail official. In his complaint, Morse alleges that defendants violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, when one of them forcibly removed a religious necklace from plaintiff's person during his transfer of custody between local authorities and the DOCCS.

Currently pending before the court are independent motions brought by the two defendants, both requesting the entry of summary judgment

dismissing plaintiff's claims on a variety of grounds, including lack of

personal involvement, qualified immunity, and mootness. For the reasons

set forth below, I recommend that defendants' motions be granted.

I.  BACKGROUND[1]

Plaintiff is currently a New York State prison inmate being held in the

custody of the DOCCS, and designated to the Riverview Correctional

Facility ("RCF"), located in Ogdensburg, New York. *See generally* Dkt. No.

10. Plaintiff's claims, however, stem from events that occurred during the

course of his transfer from the Broome County Sheriff's Correctional

Facility ("BCSCF") to the Elmira Correctional Facility ("ECF"), the latter of

which is a prison operated by the DOCCS. Dkt. No. 56-2 at 26-30.

Since 2003, plaintiff has been a practicing Roman Catholic. Dkt. No.

56-2 at 66. Just before her death in 2008, plaintiff's mother gave him a

stainless steel, one-and-one-half inch crucifix on a metal chain that

measured approximately twenty inches. *Id.* at 26-27, 30-31. Plaintiff

prayed with the crucifix during his daily prayers, and holding it made him

feel closer to his god. *Id.* at 29, 40. The crucifix also had "sentimental

---

[1]     In light of the procedural posture of this case, the following recitation is derived
from the record now before the court, with all inferences drawn and ambiguities
resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

value" and "helped [him] remember [his] mother." *Id.* Before 2008, plaintiff prayed with rosary beads. *Id.* at 47.

In October 2011, plaintiff was incarcerated in the BCSCF awaiting the disposition of a pending criminal forgery charge. Dkt. No. 56-2 at 7. After plaintiff entered a guilty plea and was sentenced, arrangements were made to transfer him into DOCCS custody to begin serving his prison sentence. *Id.* at 27, 33-34. Plaintiff was transported from the BCSCF to the ECF on April 23, 2012, by two BCSCF corrections officers, including defendant Douglas C. Springer. *Id.* at 33, 108-110; Dkt. No. 55-3 at 2. At the time, defendant Springer's duties included transporting inmates in a variety of settings, including to outside medical appointments, court proceedings, mental health facilities, rehabilitation centers, and other correctional facilities, including the ECF. Dkt. No. 55-3 at 1-2.

Before transporting plaintiff, defendant Springer suggested to Morse that he remove and place the crucifix that he was wearing around his neck in his property bag to be mailed to his relatives. Dkt. No. 56-2 at 45-46, 104. At the time of the transfer, it was defendant Springer's understanding that the DOCCS did not allow inmates being transferred into the ECF for intake to wear chains, including those with religious items attached. Dkt. No. 55-3 at 2. This belief was shared by Mark W. Smolinski, the jail

4

administrator at the BCSCF. Dkt. No. 55-4 at 1. The record evidence reveals, however, that the BCSCF Inmate Handbook stated that, if an inmate is "sentenced to a New York State Correctional Facility, [he] will . . . be allowed to take . . . [r]eligious medals – [o]n chains, which do not exceed $50.00 in value, have no stone, and do not exceed 2" in diameter." Dkt. No. 55-5 at 5; *see also id.* at 21.

Upon his arrival at the ECF, defendant Springer observed that plaintiff was still wearing the crucifix necklace underneath his shirt. Dkt. No. 55-3 at 2; Dkt. No. 56-2 at 110. Defendant Springer then confiscated the crucifix and destroyed it. Dkt. No. 55-5 at 2; Dkt. No. 56-2 at 28-29. After plaintiff began to protest, defendant Ronald Mallernee, a corrections officer employed by the DOCCS and working at the ECF, approached the two and inquired regarding the apparent disagreement between plaintiff and defendant Springer. Dkt. No. 56-2 at 28, 30. Plaintiff and defendant Mallernee had a brief verbal exchange during which defendant Mallernee told plaintiff that he "[didn't] care" whether plaintiff was permitted to wear the necklace and that defendant Springer's decision to confiscate it would stand. *Id.* at 31-32. The encounter with defendant Mallernee was brief, lasting "[m]aybe two minutes." *Id.* at 33, 111.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on October 31, 2013. Dkt. No. 1. Plaintiff's original complaint named eight individuals as defendants, including several DOCCS employees, the Broome County Clerk, and members of the Broome County Sheriff's Department. *Id.* at 2. On January 6, 2014, Senior District Judge Lawrence E. Kahn issued a decision and order, pursuant to 28 U.S.C. §§ 1915(e), 1915A, granting plaintiff leave to proceed *in forma pauperis* and dismissing his complaint, with leave to amend, for failure to state a claim upon which relief may be granted. Dkt. No. 6.

Plaintiff availed himself of the opportunity to replead, filing an amended complaint on January 21, 2014. Dkt. No. 7. By decision and order dated July 8, 2014, Judge Kahn dismissed all of the claims set forth in plaintiff's amended complaint with the exception of the First Amendment and RLUIPA claims asserted against defendants Springer and Mallernee. Dkt. No. 9. Judge Kahn also directed the clerk of the court to docket a copy of the original complaint, together with the amended complaint, as plaintiff's second amended complaint ("SAC"), which is now the operative pleading. *Id.* at 4 n.7.

Following service of the summons and SAC, defendant Springer and defendant Mallernee separately moved to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. Nos. 27, 36. On August 17, 2015, I issued a report to Judge Kahn recommending that both motions be denied. Dkt. No. 43. The report and recommendation was approved and adopted in its entirety by Judge Kahn on September 29, 2015. Dkt. No. 47.

On June 30, 2016, defendants Springer and Mallernee each filed a motion for summary judgment seeking dismissal of plaintiff's claims both on the merits and based upon qualified immunity. Dkt. Nos. 55, 56. Although plaintiff filed a response on or about August 22, 2016, it is not clear whether the response was intended to address both defendants' motions or just the motion filed by defendant Springer.[2] Dkt. No. 62. Defendant Springer has since submitted a short reply in further support of his motion. Dkt. No. 63. Defendants' motions, which are now fully briefed, have been referred to me for the issuance of a report and

---

[2]     Mindful of my obligation to extend special solicitude to *pro se* litigants, I have assumed that plaintiff intended his response to respond to both defendants' motions.

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

   A.    Summary Judgment Standard

   Summary judgment motions are governed by Rule 56 of the Federal

Rules of Civil Procedure. Under that provision, the entry of summary

judgment is warranted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391

F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this

inquiry if it "might affect the outcome of the suit under the governing law."

*Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549,

553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson*, 477 U.S. at 248.

   A party moving for summary judgment bears an initial burden of

demonstrating that there is no genuine dispute of material fact to be

decided with respect to any essential element of the claim in issue; the

failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Plaintiff's First Amendment Free Exercise Claim

1.    Defendant Mallernee

Among the grounds advanced by defendant Mallernee for seeking dismissal of plaintiff's First Amendment claim asserted against him is lack of personal involvement. Dkt. No. 56-4 at 10-12. In particular, defendant

Mallernee argues that no reasonable factfinder could conclude that he was personally involved in the confiscation of plaintiff's crucifix for purposes of section 1983. *Id.*

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable under section 1983 for his actions. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).[3]

---

[3]     All unreported cases cited to in this report have been appended for the convenience of the *pro se* plaintiff.

The evidence in the record now before the court reveals that plaintiff's crucifix was removed and confiscated by defendant Springer before defendant Mallernee became involved in the incident. Dkt. No. 56-2 at 28. When asked at his deposition about defendant Mallernee's involvement, plaintiff testified, "I don't think [defendant Mallernee] had as much of an involvement in the situation now that I can think back about it with a clearer head." Dkt. No. 56-2 at 77; *see also id.* at 111 ("Defendant Mallernee's interaction with [me] was very brief. Most of [the incident involved] defendant Springer."). Plaintiff also stated that he did not believe defendant Mallernee harmed him or intended to deprive him of any rights. *Id.* at 75. Indeed, at the time of the incident, it did not appear to plaintiff that defendant Mallernee ever saw the crucifix or had a clear understanding of what item was confiscated by defendant Springer. *Id.* at 28-30, 43, 58. Moreover, plaintiff conceded that defendant Mallernee did not direct defendant Springer to confiscate the crucifix or to destroy it. *Id.* at 42-43, 45.

It appears that plaintiff's claim against defendant Mallernee centers upon his failure to investigate the matter once he approached plaintiff and defendant Springer. Such a failure, however, does not give rise to liability and is insufficient to establish a defendant's personal involvement in an

underlying incident. *See, e.g., Jordan v. Fischer*, 773 F. Supp. 2d 255, 279 (N.D.N.Y. Feb. 17, 2011) (Sharpe, J., *adopting report and recommendation by* Baxter, M.J.) ("[A] defendant's failure to properly investigate a grievance does not rise to the level of either personal involvement in the assault, nor does it state a separate constitutional claim."); *Alster v. Goord*, No. 05-CV-10883, 2008 WL 506406, at *4 (S.D..Y. Feb. 26, 2008) ("[The defendants] allegedly passed the buck by deferring to others when [the plaintiff]'s complaints came to them and otherwise failed to stop unlawful acts. . . . These allegations. . . do not sufficiently allege personal involvement." (quotation marks omitted)). Accordingly, I recommend defendant Mallernee's motion be granted with respect to plaintiff's First Amendment claims asserted against him.

### 2.   Defendant Springer

Among the grounds upon which defendant Springer relies in requesting dismissal of plaintiff's First Amendment claim asserted against him is qualified immunity. Dkt. No. 55-6 at 18-20. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009);

*Sudler v. City of N.Y.*, 689 F.3d 159, 174 (2d Cir. 2012). The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct. *Sudler*, 689 F.3d at 174 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson*, 555 U.S. 223)).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation," *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a statutory or constitutional right, and if so, whether that

right "was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (citing *Reichle*, 132 S. Ct. at 2093). The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quotation marks and alterations omitted). "To this end, a plaintiff need not show a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Terebesi*, 764 F.3d at 230 (quoting *al-Kidd*, 131 S. Ct. at 2083). "[E]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' [however,] the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) (citations omitted). This "objective reasonableness" part of the test is satisfied if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As noted above, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle*, 132 S. Ct. at 2093); *accord, al-Kidd*, 131 S. Ct. at 2083. The Supreme Court has recently "reiterate[d] the longstanding principle that clearly established law should not be defined at a high level of generality, . . . but must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quotation marks and citations omitted); *see also Mullenix*, 136 S. Ct. at 308.

With these principles in mind, I have analyzed defendant Springer's qualified immunity defense in this case by asking whether prison inmates had a clearly established right to wear a small metal crucifix on a metal chain during their transfer between two prison facilities on April 23, 2012 – the date of the incident in this matter. Although there is ample case law that reflects incarcerated individuals have a First Amendment right to possess some religious artifacts subject to legitimate penological interests, *see, e.g., Hudson v. Palmer*, 468 U.S. 517, 547 n.13 (1984) (Stevens, J., concurring in part and dissenting in part), in my view, that legal principle is too general and does not provide corrections officers with a "fair and clear warning" that requiring an inmate to remove his necklace, comprised of a

metal chain and small crucifix, during the transfer of the inmate from one facility to another and prior to entering intake at the new facility – conditions under which security and safety concerns for both inmates and corrections officers are heightened for a variety of obvious and non-obvious reasons – would have violated the inmate's First Amendment right to free exercise. *See, e.g., Davila v. Marshall*, 649 F. App'x 977, 982 (11th Cir. 2016) (granting qualified immunity to the defendants and noting that, "[w]hile a case need not be on all fours, with materially identical facts in order to preclude qualified immunity, it does need to give the officials reasonable warning that the conduct at issue violated constitutional rights"). Moreover, while I am mindful that the Second Circuit has said that a "right" for purposes of qualified immunity may become "clearly established" "so long as preexisting law clearly foreshadows a particular ruling on the issue," *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014), I have found no binding authority from which reasonable officials in defendant Springer's position should have divined an inmate's right to wear a small metal crucifix around his neck on a metal chain during the transfer from one correctional facility to another. Accordingly, I recommend defendant Springer be granted qualified immunity from suit and plaintiff's First Amendment claim asserted against him be dismissed.

## C.    Plaintiff's RLUIPA Claim

There is no cognizable private right of action under the RLUIPA against state officers sued in their individual capacities, and the RULIPA does not allow for the award of monetary damages against state officers sued in their official capacities. *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013) (citing *Sossaman v. Tex.*, 131 S. Ct. 1651, 1656 (2011)); *accord, Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) ("RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities."); *Williams v. Leonard*, No. 11-CV-1158, 2015 WL 3544879, at *1 (N.D.N.Y. June 4, 2015) (McAvoy, J.) ("[T]o the extent that Plaintiff seeks monetary damages against the Defendants in their individual or official capacities under the RLUIPA, such damages are not available."). Plaintiff is therefore limited to injunctive and declaratory relief against the defendants in their official capacities, should he prevail on his RLUIPA claim. Dkt. No. 10 at 8.

The record in this case reveals that plaintiff was transferred out of the ECF and into the RCF shortly after his intake into DOCCS custody. Dkt. No. 56-2 at 5. In addition, none of plaintiff's claims in this case involve any incidents that occurred at the RCF. *See id.* at 26-27, 33 (plaintiff testifying at his deposition that this case is about the confiscation and

destruction of the crucifix necklace on April 23, 2012, at ECF). It is well established that claims for declaratory and injunctive relief are rendered moot following an inmate's transfer from the facility at which the deprivations complained of occurred into a different prison. *Sallahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Accordingly, I recommend that plaintiff's RLUIPA claims asserted against defendants Springer and Mallernee be dismissed as moot.

## IV.   SUMMARY AND RECOMMENDATION

Plaintiff's remaining claims in this action are asserted under the First Amendment's Free Exercise Clause and the RLUIPA against defendant Springer, a corrections officer employed at the BCSCF, and defendant Mallernee, a DOCCS employee stationed at the ECF. Both defendants have moved for the entry of summary judgment dismissing plaintiff's claims on a variety of grounds. In light of the absence of any record evidence from which a reasonable factfinder could conclude that defendant Mallernee was personally involved in the alleged deprivations, plaintiff's First Amendment claims asserted against that individual are subject to dismissal. With respect to defendant Springer, even assuming the incident on April 23, 2012, at the ECF occurred exactly as plaintiff contends, defendant Springer did not violate one of plaintiff's clearly

established rights and, therefore, is entitled to qualified immunity from suit. Lastly, in light of plaintiff's transfer from ECF to RCF, his RLUIPA claims seeking declaratory and injunctive relief are moot. Accordingly, it is hereby respectfully

RECOMMENDED that the summary judgment motions filed by defendants Springer and Mallernee, Dkt. Nos. 55, 56, be GRANTED, and that plaintiff's second amended complaint in this action be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[4]  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

---

[4]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     February 17, 2017
             Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Dale HENDRICKSON, Plaintiff,
v.
UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet
Keith, Otisville Medical Department, Defendants.

No. 91 CIV. 8135.
Jan. 24, 1994.

MEMORANDUM AND ORDER

McKENNA, District Judge.

**\*1** On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an in-
mate then in confinement at the Federal Correction-
al Institution in Otisville, New York ("Otisville"),
filed this action for injunctive relief and damages
based upon alleged violations of his rights under
the United States Constitution, Amendments I, IV,
V, VI, IX, and XIII, and upon violations of various
laws and/or regulations governing prison adminis-
tration.FN1 The Complaint named as defendants
G.L. Hershberger ("Hershberger"), the United
States Attorney General ("Attorney General"), Gary
Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith
("Keith"), the Bureau of Prisons ("BOP"), and the
Otisville Medical Department ("OTV Medical De-
partment") (collectively "Defendants"). Defendants
moved for judgment on the pleadings pursuant to
Rule 12(c) of the Federal Rules of Civil Procedure,
or, in the alternative, for summary judgment pursu-
ant to Rule 56 of the Federal Rules of Civil Proced-
ure. For the reasons set out below, Defendants' Rule
12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Com-
plaint, pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure, for failure to state a claim upon

which relief can be granted. Rule 12(c) provides:

After the pleadings are closed but within such
time as not to delay the trial, any party may move
for judgment on the pleadings. If, on a motion for
judgment on the pleadings, matters outside the
pleadings are presented to and not excluded by
the court, the motion shall be treated as one for
summary judgment and disposed of as provided
in Rule 56, and all parties shall be given reason-
able opportunity to present all material made per-
tinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that
are employed for dismissing a complaint for failure
to state a claim under Fed.R.Civ.P. 12(b)(6) are ap-
plicable" to a Rule 12(c) motion to dismiss for fail-
ure to state a claim upon which relief can be gran-
ted. *See Ad–Hoc Comm. of the Baruch Black &
Hispanic Alumni Ass'n v. Bernard M. Baruch Col-
lege,* 835 F.2d 980, 982 (2d Cir.1987); *see also Vi-
acom Int'l. Inc. v. Time, Inc.,* 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Ar-
thur R. Miller, *Federal Practice and Procedure* ¶
1367, at 515–16 (1990). Thus, the Court must read
the Complaint generously, drawing all reasonable
inferences from the complainant's allegations. *See
California Motor Transp. v. Trucking Unlimited,*
404 U.S. 508, 515 (1972). Moreover,
"consideration is limited to the factual allegations
in [the] amended complaint, which are accepted as
true, to documents attached to the complaint as an
exhibit or incorporated in it by reference, to matters
of which judicial notice may be taken, or to docu-
ments either in plaintiff['s] possession or of which
plaintiff[ ] had knowledge and relied on in bringing
suit." *Brass v. American Film Technologies, Inc.,*
987 F.2d 142 (2d Cir.1993); *accord Allen v. West-
point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d
Cir.1991); *Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied,* 112
S.Ct. 1561 (1992); *Frazier v. General Elec. Co.,*
930 F.2d 1004, 1007 (2d Cir.1991). Defendants,
therefore, are entitled to dismissal for failure to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

state a claim only if the Court finds beyond a doubt that "plaintiff can prove no set of facts" to support the claim that plaintiff is entitled to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

## II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H[earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

## III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [FN2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint, mentioned by name any of the individual named Defendants. Defs.' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint

must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

> FN1. The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna of 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

> FN2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

S.D.N.Y.,1994.
Hendrickson v. U.S. Atty. Gen.
Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

2008 WL 506406
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Stephen D. ALSTER, Plaintiff,
v.
Glenn S. GOORD et al., Defendants.

No. 05 Civ. 10883(WHP).
|
Feb. 26, 2008.

**Attorneys and Law Firms**

Stephen P. Alster, Stormville, NY, pro se.

Judy Prosper, Esq., New York, NY, for State Defendants.

Janice Silverberg, Esq., New York, NY, for City Defendants.

*MEMORANDUM AND ORDER*

WILLIAM H. PAULEY III, District Judge.

**\*1** Plaintiff Stephen D. Alster ("Alster") brings this federal civil rights action against the City and State of New York and various prison officials pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* The State of New York, the New York State Department of Correctional Services ("NYSDOCS"), New York State Supreme Court Justice Abraham Gerges ("Judge Gerges"), former NYSDOCS Commissioner Glen S. Goord ("Goord"), Inmate Grievance Director Thomas Eagen ("Eagen"), Superintendent Ercole ("Ercole"), Deputy Superintendent Cunningham ("Cunningham"), Program Director Temple ("Temple"), and Counselor Gonzalez ("Gonzalez") (collectively, the "State Defendants") move to dismiss the claims against them pursuant to Fed.R.Civ.P. 12(b) (1) and 12(b)(6). [1] For the following reasons, the motion is granted in part and denied in part.

*BACKGROUND*

For the purposes of this motion, the Court accepts the following allegations of the complaint as true. Alster has been an inmate at NYSDOCS's Green Haven Correctional Facility ("Green Haven") since July 8, 2005. (Compl.¶¶ 2, 25, 55, 59.) Alster is "visually impaired and hearing impaired and must use a wheelchair due to [his] balance disorder and other neurological conditions," (Compl. ¶ 26 .) On October 25, 2004, while Alster was incarcerated in Rikers Island, Judge Gerges issued a court order requiring that "medical devices and prosthetics" be provided to Alster. (Compl.¶ 33.) The complaint alleges further that Judge Gerges delayed issuing the order and thereby denied Alster his right to immediate medical care. (Compl.¶ 33, 63.)

Since Alster arrived at Green Haven, unspecified "Defendants" have denied him access to unspecified facilities that he "require[s] for the activities of daily living" and have "prevented [him] from showering." (Compl.¶ 28, 29.) An absence of handrails throughout Green Haven has caused Alster unspecified injuries. (Compl.¶ 29.) Green Haven prison doctors have been "indifferent to" and have failed to "address in any way [Alster's] neurological disability and [his] balance disability." (Compl.¶ 41.) They have not provided Alster with any "treatment or prosthetics" for his hearing impairment. (Compl.¶ 42.) Alster, who requires dentures, has also been denied "dentures that are usable," and is therefore "unable to eat properly." (Compl.¶¶ 46, 47.) "Provider Mamis" has repeatedly denied Alster's requests for medical care, taken away his medication, overruled previous orders providing for his medication, and accused him of fabricating his disabilities. (Compl.¶ 53, 54, 64.)

Alster's complaints concerning his lack of medical care and access to facilities were communicated to Superintendent Ercole, and "several others"-including Cunningham, Gonzalez and Temple-who "followed [Ercole's] lead and passed the buck." (Compl.¶¶ 65-66, 68-73.) Temple also denied Alster access to "a program [in which Alster could] participate in the medical department." (Compl.¶ 85.) Superintendent Ercole, Thomas Eagen, Commissioner Goord and various doctors "together" altered, falsely documented, and failed to document Alster's medical problems, and in so doing "physically and mentally discriminated against and caused not only physical pain but mental stress and associated pain." (Compl.¶¶ 76, 77.) Goord contributed to Alster's injuries by "delegating ... unlawful

practices ... and ... allowing this practice to continue," as did Ercole and Cunningham through their "lack of supervision, failure to stop unlawful acts, and their own participation." (Comp.¶¶ 16, 18.)

### DISCUSSION

I. *Legal Standard*

**\*2** A court grants a motion pursuant to Fed.R.Civ.P. 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate [the case]," *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000), whereas a Rule 12(b)(6) motion is granted if the plaintiff fails to state a claim for relief. Although a Court must decide a Rule 12(b)(1) question first since it involves a court's jurisdiction, *Magee v. Nassau County Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998), the same legal standards apply to Rule 12(b)(1) and Rule 12(b) (6) motions, *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003). The Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor. *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998). Nonetheless, "[i]n order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' " *Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir.2007) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007)). "[P]laintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1964-65 (internal quotation marks and citations omitted).

A *pro se* litigant's submissions are held to "less stringent standards than [those] drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Courts "must construe *pro se* complaints liberally" and read them to raise the strongest arguments that they suggest. *Lerman v. Bd. of Elections,* 232 F.3d 135, 140 (2d Cir.2000); *see also Taylor v. Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002); *Weixel v. Bd. of Educ, of N.Y.,* 287 F.3d 138, 146 (2d Cir.2002). "These liberal pleading rules apply with particular stringency to complaints of civil rights violations." *Phillip v. Univ. of Rochester,* 316 F.2d 291, 293-294 (2d Cir.2003). Nevertheless, the Court does not have to accept as true "conclusions of law or unwarranted

deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (citations omitted).

"A plaintiff who has not clearly identified in [his] complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other." *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.1993). The complaint does not specify whether Alster sues the individual State Defendants in their official or individual capacities. This Court's analysis therefore presumes Alster means to sue them in both capacities.

### II. *Judge Gerges*

Judges are entitled to absolute immunity from damages or injunctive relief for all actions in their judicial capacities that are made in the "clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-59 (1978). Absolute immunity applies even if the judicial action was in error or malicious. *Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999). Because Judge Gerges's order to provide Alster with medical care was a judicial act for which his jurisdiction is undisputed, Alster's ADA and § 1983 claims against Judge Gerges are dismissed pursuant to Rule 12(b) (1).

### III. *ADA Claims*

**\*3** The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Because the ADA targets public entities, individuals cannot be named as defendants in their individual capacities. *See Carrasquillo v. City of New York,* 324 F.Supp.2d 428, 441-42 (S.D.N.Y.2004); *Hallett v. New York State Dep't of Correctional Servs.,* 109 F.Supp.2d 190, 199-200 (S.D.N.Y.2000). To the extent Alster brings claims against the State Defendants in their individual capacities based on the ADA, those claims are dismissed pursuant to Rule 12(b)(1).

"[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edeiman v. Jordan,* 415 U.S. 651, 662-63 (1974). However, Congress may abrogate state sovereign immunity pursuant to Section Five of the Fourteenth Amendment. *Tennessee v. Lane,* 541 U.S. 509, 559-60

(1978). "[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia,* 546 U.S. 151, 159 (2006). To the extent Alster states valid claims pursuant to Title II of the ADA, the State Defendants are not immune from those claims. Accordingly, the State Defendants' motion pursuant to Rule 12(b)(1) to dismiss the ADA claims against the State of New York, NYSDOCS and the individual State Defendants in their official capacities is denied.

### IV. *Section 1983* Claims

Under 42 U.S.C. § 1983, a claim exists against "[e]very person" who deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws" acting under the color of state law. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress of the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). Construed liberally, Alster's complaint alleges Defendants' failure to provide access to proper medical care and facilities violated the Eighth and Fourteenth Amendments. *See United States v. Georgia,* 546 U.S. 151, 157 (2006) ("Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment.").

#### A. *State of New York and NYSDOCS*

"Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." *Spencer v. Doe,* 139 F.3d 107, 11 (2d Cir.1998). Accordingly, Alster's § 1983 claims against the State of New York, NYSDOCS and its employees in their official capacities are dismissed pursuant to Rule 12(b)(1).

#### B. *Temple*

To state an Eighth Amendment claim arising out of inadequate medical treatment, a prisoner must allege "deliberate indifference to [his] serious medical needs." *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The prisoner must allege "that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain ... [and] that the charged official ... kn[ew] of and disregard[ed] an excessive risk

to inmate health or safety." *See Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (stating elements to establish violation) (internal quotation marks and citations omitted). The only specific allegation against Temple is that he denied Alster participation in "a program [in which Alster could] participate in the medical department." (Compl.¶ 85.) Because Alster has not specifically alleged that the program in question would have treated one of his medical conditions, or that Temple denied Alster access with the requisite intent, Alster's claim against Temple is dismissed pursuant to Rule 12(b)(6).

#### C. *Goord, Eagen, Ercole, Cunningham and Gonzalez*

**\*4** A § 1983 claim against a prison official must allege that individual's personal involvement beyond simply being a "link in the prison chain of command." *McKenna v. Wright,* 386 F.3d 432, 437 (2d Cir.2004) (quoting *Avers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Personal involvement is established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation ... failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). A plaintiff "cannot bring a § 1983 claim against individuals based solely on their supervisory capacity or the fact that they held high positions of authority." *Thomas v. Coombe,* No. 95 Civ. 10342(HB), 1998 WL 391143, at \*6 (S.D.N.Y, July 13, 1998). Ercole, Cunningham and Gonzalez allegedly "passed the buck" by deferring to others when Alster's complaints came to them and otherwise "failed to stop unlawful acts," while Goord delegated Alster's complaints to subordinates. (Compl.¶¶ 16, 18, 65-66,

68-73.) These allegations, the only specific ones Alster made in the complaint regarding these Defendants, do not sufficiently allege personal involvement.

The only allegation involving Eagen is that he-along with Ercole, Cunningham, Goord and various doctors-"physically and mentally discriminated against [Alster] and caused not only physical pain but mental stress and associated pain" and "together" were responsible for maintaining inaccurate records about his disabilities. (Compl.¶¶ 76, 77.) These statements are conclusory and do not allege facts specific enough to state a claim. *See Twombly,* 127 S.Ct. at 1964-65. The § 1983 claims against Eagen, Goord, Cunningham and Gonzalez are therefore dismissed pursuant to Rule 12(b)(6).

*CONCLUSION*

For the foregoing reasons, all claims against Judge Gerges are dismissed, as are the ADA and § 1983 claims against Goord, Cunningham, Eagen, Gonzalez, Temple, and Ercole in their individual capacities. The § 1983 claims against the State of New York, NYSDOCS and the individual State Defendants in their official capacities are also dismissed. The State Defendants' motion to dismiss the ADA claims against the State of New York, NYSDOCS and the individual State Defendants in their official capacities is denied.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 506406

Footnotes

1    While the State Defendants move to dismiss the claims against "all current and former employees of DOCS," they offer no arguments for dismissal of the claims against NYSDOCS employees "Dr. Bernstein," "Dr. Koenigsmann," "Dr. Wright," "Provider Mamis" and "John Serhan." Thus, this Court does not address the claims against these State Defendants.

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 3544879
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Richard WILLIAMS, Plaintiff,

v.

Mark LEONARD, Defendants.

No. 9:11–CV–1158.  |  Signed June 4, 2015.

**Attorneys and Law Firms**

Richard Williams, Comstock, NY, pro se.

Melissa A. Latino, New York State Attorney General, Albany, NY, for Defendant.

**DECISION & ORDER**

THOMAS J. McAVOY, District Judge.

**\*1** This *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, was referred to the Hon. Thérèse Wiley Dancks, United States Magistrate Judge, for a ReportRecommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff alleges that the Defendants violated his right to free exercise of religion while incarcerated.

The Report–Recommendation, dated March 19, 2015, recommended that Defendants' motion for summary judgment be granted in part and denied in part.

The parties filed timely objections to the Report–Recommendation. When objections to a magistrate judge's Report–Recommendation are lodged, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having considered the issues raised in the Plaintiffs' objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Wiley Dancks for the reasons stated in the Report–Recommendation, with one exception. [1] Magistrate Judge Dancks recommends that the Court deny summary judgment on Plaintiffs RLUIPA claim "for injunctive relief and damages regarding the length of Plaintiffs pants" and Plaintiffs RLUIPA claim "for injunctive relief and damages regarding family participation in Eid el-Adha." "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland v. Goord,* 758 F.3d 215, 224 (2d Cir.2014) (citing *Sossamon v. Texas,* ––– U.S. ––––, ––––, 131 S.Ct. 1651, 1663, 179 L.Ed.2d 700 (2011)). Thus, to the extent that Plaintiff seeks monetary damages against the Defendants in their individual or official capacities under the RLUIPA, such damages are not available.

It is therefore

**ORDERED** that the parties' objections to the Report–Recommendation of Magistrate Jude Wiley Dancks, dkt.s 40, 41, are hereby OVERRULED in part. The Report–Recommendation, dkt. # 39, is hereby ADOPTED, except that the Court finds that Plaintiff may not obtain damages against the Defendants in their individual and/or official capacities under the RLUIPA. it is therefore ordered that Defendants' motion for summary judgment, dkt. # 33, is hereby GRANTED in part and DENIED in part, as follows:

1. The motion is GRANTED with respect to Plaintiff's Equal Protection Clause claim for injunctive relief regarding family participation in Eid el-Adha;

2. The motion is GRANTED with respect to any claims Plaintiff makes for damages against the Defendants in their individual and/or official capacities under the RLUIPA; and

**\*2** 3. The motion is DENIED in all other respects

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2015 WL 3544879

Footnotes

1    The Court notes that the Report–Recommendation contains one apparent typographical error. In discussing the Defendants' policies concerning hems on pants, the Magistrate Judge noted that the policy had been implemented in 2007 and amended in 2009 and 2013. *See* dkt. # 39 at 26–27. The Magistrate Judge found that the changes to the policy each permitted prisoners to hem their pants higher above their feet in an attempt to accommodate the religious practice at issue here. The Magistrate Judge noted that "[t]his suggests that Defendants were using the least restrictive means to further their interests between 2007 and 2013." *Id.* at 27. Since the Magistrate Judge recommended that the Defendants' motion be denied with respect to the RLUIPA claim, the Court assumes that the Magistrate Judge found that "Defendants were [*not* ] using the least restrictive means to further their interests between 2007 and 2013." The Magistrate Judge would otherwise have found that Defendants were entitled to summary judgment, and the Magistrate Judge clearly found otherwise. The Court agrees with the Magistrate Judge that questions of fact exist with respect to Plaintiff's claims regarding pant length under the RLUIPA.

---

**End of Document**<span style="float:right">© 2015 Thomson Reuters. No claim to original U.S. Government Works.</span>